335 F.2d 632
 Stella Marie LOWMAN and her husband, Lawrence Gilbert
Lowman, et al., Appellants,
v.
Louie A. FALSETTI, Successor Administrator with Will Annexed
in the Estate ofB. F. Guido, Deceased, et al., Appellees.
 No. 20471.
 United States Court of Appeals Fifth Circuit.
 Aug. 14, 1964, Rehearing Denied Oct. 2, 1964.
 
 Glenn Barber, Jasper, Tex., D. E. Suhr, Houston, Tex., Barber & Seale, Jasper, Tex., Bryan, Suhr & Bering, Houston, Tex., for appellants.
 Willard B. Wagner, Jr., Erwin, Wagner & Hodson, Fred W. Hodson, Jr., Houston, Tex., for defendants-appellants Stella Marie Lowman and her husband Lawrence Gilbert Lowman.
 William VanDercreek, Cecil L. Woodgate, Woodgate & Richards, Dallas, Tex., for appellees.
 Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.
 GEWIN, Circuit Judge.
 
 
 1
 This appeal requires us to determine the validity of a Texas State Court judgment which was successfully attacked by plaintiffs Falsetti (appellees) in a collateral proceeding brought in the United States District Court for the Northern District of Texas. The District Court concluded as a matter of law that the judgment of the State District Court was void and subject to collateral attack. Falsetti v. Indiana Oil Purchasing Co., 215 F.Supp. 420 (D.C.N.D.Tex.1963). The controversy concerns the title to certain land situated in Brazoria County, Texas.
 
 
 2
 This suit was filed by plaintiffs Falsetti, et al. against Stella Marie Lowman et vir., Indiana Oil Purchasing Company, Pan American Petroleum Corporation,[1] and John (Johnnie) Frank, Trustee, to recover royalty payments held in suspense by defendant oil companies. The controlling issue is whether the state court judgment was rendered in violation of Article 1982, Vernon's Civil Statutes Annotated.[2] We disagree with the District Court and hold the state court judgment valid.
 
 
 3
 The following statement of facts, although somewhat lengthy, is requisite to a complete understanding of the various technical questions involved. On July 31, 1929, Dora Frank Guido and B. F. Guido were legally married and remained husband and wife until her death in 1949. By warranty deed dated February 27, 1934, B. F. Guido conveyed to his wife, Dora Frank Guido, an undivided one-half interest in and to the land involved, located in Brazoria County, Texas. This land and the mentioned royalty payments are the chief if not the only remaining assets of either of the Estates of Dora Frank Guido or B. F. Guido. The other one-half interest is owned by certain other persons and is not here involved.
 
 
 4
 On May 1, 1934, Dora Frank Guido, joined by her husband, B. F. Guido, et al., executed an Oil, Gas and Mineral Lease covering the Brazoria County property, which lease has been at all times from the date of its execution until the present time and is now a valid and subsisting lease owned and held by defendant Pan American Petroleum Corporation under and by virtue of mesne assignments. Since about 1937 there has been production of oil or gas from the property.[3]
 
 
 5
 On September 16, 1949, Dora Frank Guido died testate survived by her husband, B. F. Guido, and by her only child and sole heir, defendant Stella Marie Lowman. Insofar as here material, Dora Frank Guido's Last Will and Testament, dated December 3, 1942, devised the residue of her estate to her husband, B. F. Guido, but in the event he predeceased her or in the event of their contemporaneous deaths, it devised her entire estate in trust with directions to the trustees to pay the entire income therefrom to her daughter, Stella Marie Lowman, for her life, and thereafter, under certain circumstances, to Lawrence Gilbert Lowman, the daughter's husband, for his life, with one-half of the remainder to her collateral heirs and the other one-half to B. F. Guido's collateral heirs. The will contained this further provision:
 
 
 6
 '(8) This WILL is made in consideration of the making on this same day, by my husband, B. F. Guido, of a will with the same terms and provisions, and it is our intention to create a TRUST ESTATE as herein provided for the benefit of Mrs. Stella Marie Lowman and her husband, after her death, and for the distribution of the Trust Estate after termination of the Trust in the manner and terms herein set forth.'
 
 
 7
 The application of B. F. Guido to probate the said will was granted, and on January 11, 1950, the will was admitted to probate. B. F. Guido was appointed independent executor without bond. He took possession of the entire estate and appropriated it to his own use and benefit. He did not account to anyone for any of the said estate, but received and accepted the benefits under the will during his lifetime.
 
 
 8
 B. F. Guido subsequently married Doris C. M. Guido (now Doris C. M. Falsetti, and one of the plaintiffs herein) in April, 1951. In June 1957, B. F. Guido died testate while a resident of California. A will of B. F. Guido, dated July 3, 1951, referred to as the 'subsequent will' was admitted to probate in California, and the plaintiff Doris C. M. Falsetti was appointed administratrix with the will annexed. This subsequent will in effect devised forty-nine percent (49%) of his estate to plaintiff Doris C. M. Guido Falsetti, forty-nine percent (49%) to the defendant Stella Marie Lowman, and one percent (1%) to each of two Roman Catholic Parish Churches.
 
 
 9
 Plaintiff Doris C. M. Falsetti filed exemplified copies of B. F. Guido's subsequent will and the foreign order of probate and letters of administration in Brazoria County, Texas. In December 1958, orders in the ancillary proceeding in B. F. Guido's estate were entered which admitted the will to probate and appointed plaintiff Doris C. M. Falsetti, Administratrix with will annexed. Mrs. Falsetti was removed as Ancillary Administratrix upon motion by Stella Marie Lowman in February 1960. The action in the Texas State Court which led ultimately to the judgment now under scrutiny was filed in September 1958, by Stella Marie Lowman et vir. against Doris C. M. Guido, et al. A final judgment was rendered by the District Court of Brazoria County, Texas, dated September 16, 1960, and entered on October 18, 1960.[4]
 
 
 10
 In November 1960, plaintiffs Louie A. Falsetti and Doris C. M. Guido were married, subsequent to the entry of the state court judgment now under attack. In May 1961, immediately prior to the filing of this Federal Court suit and after the state court judgment had become final,[5] the County Court of Brazoria County entered an order appointing plaintiff Louie A. Falsetti successor ancillary administrator for certain limited purposes set forth in the order.[6]
 
 
 11
 The foregoing material facts led the court below to conclude, as previously stated, that the judgment of the Texas State Court was void because, (1) it was rendered in violation of Article 1982 Vernon's Civil Statutes Annotated; and (2) the judgment on its face reveals the necessity of administration in the Estate of B. F. Guido, and because plaintiff Doris C. M. Guido Falsetti, Administratrix, and a necessary party was dismissed prior to the entry of judgment.
 
 
 12
 The defendants assert five theories in support of their contention that the State Court judgment is valid. First, Article 1982, V.C.S.A. was literally complied with; second, the judgment was regular on its face and contained absolute jurisdictional recitals; third, the state court had complete jurisdiction of the Brazoria County land and all interested parties; fourth, res judicata; and fifth, estoppel. Close scrutiny of Article 1982 is requisite to any decision upon the merits of the defendants' contentions.
 
 
 13
 The general rule regarding this section is that its provisions are mandatory, and that in every action against the estate of a decedent which involves title to land, the administrator, if any, and the heirs shall be made parties defendant. Jones v. Gibbs, 133 Tex. 645, 130 S.W.2d 274 (1939); Allen v. Matthews, Tex.Civ.App., 210 S.W.2d 849, 851 (1948). A failure to comply with Article 1982 will subject the proceedings to subsequent attack. East v. Dugan, 79 Tex. 329, 15 S.W. 273; French v. French, 148 S.W.2d 930, writ dismissed.
 
 
 14
 Prior to the entry of the state court judgment, the Probate Court had dismissed the Administratrix (plaintiff Doris C. M. Guido Falsetti) and had refused to act on three successive applications seeking the appointment of a successor administrator. The Federal District Court had before it an affidavit of the Probate Judge (admitted in evidence over objection) stating that he had refused to appoint an administrator because he felt none was necessary. The plaintiffs urge that the actual necessity of an administrator is immaterial. They argue that the judgment remains void unless it shows on its face that no administrator was necessary. We are unable to agree with this position, although we do agree with the holding of the District Court that the requirements of Article 1982 are mandatory. The reasons for our conclusion follow.
 
 
 15
 It is necessary for us to examine the purpose or objective sought to be accomplished by Article 1982. We are of the opinion that this statute is primarily devoted to the meritorious objective of providing adequate notice to all parties who have an interest in, or may have an interest in, title to or ownership of real property comprising a decedent's estate. Compliance with the requirements of this Article will afford such interested parties an opportunity to present properly their claims against the estate in an expeditious, orderly manner. The administrator could then adequately represent the estate and defend against such claims when appropriate. The Article applies to real property. The law has always favored prompt, decisive vesting of title to real property, and the statute in question was apparently enacted with such objective in mind. Its purpose was accomplished when Mrs. Doris C. M. Falsetti, as ancillary administratrix, was made a party defendant. We do not feel the statute requires that an administrator remain a party defendant throughout the entire course of the litigation, including final judgment, unless circumstances reasonably warrant it.[7] In the instant case, the administratrix was made a party to and participated in the suit in one capacity or another for approximately two years.[8]
 
 
 16
 It is interesting to note that in O'Connor v. O'Connor, (5 Cir. 1963), 315 F.2d 420, this Court refused to review the judgment of a Texas State Court which held in effect that it was not necessary under Texas law that a party be sued in his representative capacity as executor for an accounting and for the appointment of a receiver where he had refused to account when called upon to do so. The District Court in its opinion reported in 215 F.Supp. 420, cited no case to the effect that the dismissal of the administrator (trix) renders a judgment against a decedent's estate void. Nor have we been cited any case law to that effect by the plaintiffs.
 
 
 17
 The rule in the law of judgments is that a judgment of a domestic court of general jurisdiction, rendered in the exercise of its usual powers, and regular on its face, imports absolute verity. 34 Tex.Jur.2d 325. When such a judgment is collaterally attacked, every reasonable presumption that may be necessary to uphold it will be indulged, the existence of the necessary jurisdictional facts will be presumed, and it will be presumed also that in rendering the judgment, the court complied with all the mandatory provisions regulating its exercise of power. 34 Tex.Jur.2d id., Menifee v. Hamilton,32 Tex. 495; Houston Oil Co. v. Bayne, (C.A.) 141 S.W. 544 err. ref. A collateral attack may fail even though the record affirmatively discloses a positive defect in a jurisdictional matter; some presumption may be applicable that will overcome the defect. 34 Tex.Jur.2d 344.
 
 
 18
 The Texas case of Williams v. Tooke, 116 S.W.2d 1114 (Ct.Civ.Apps.Texarkana 1938) held that the absence of an allegation in the complaint that no administration was pending or necessary does not overcome the presumption of verity attaching to the judgment of every court of competent jurisdiction. The Texas Court there stated:
 
 
 19
 'In Freeman on Judgments (5th Ed.) vol. 1, p. 819, 383, it is said:
 
 
 20
 "To conclude from a mere want or insufficiency of jurisdiction recitals in the record of a court of general jurisdiction that jurisdiction was not actually acquired would be, in effect, to presume against the record, whereas it is a rule of general application that every intendment consistent with the record of such courts will be indulged to sustain their proceedings and judgments. The rule is that upon collateral attack of a domestic court of general jurisdiction the want of jurisdiction or invalidity of the judgment must affirmatively appear upon the record itself, and until the contrary appears it will be presumed that the court had jurisdiction. Nothing will be intended to be out of the jurisdiction of a court of general jurisdiction but that which expressly appears to be so. The absence from the record of the necessary jurisdictional facts, will not overcome the presumption of jurisdiction, and that papers which ought to have been included in the judgment-roll are missing therefrom is not enough to make it affirmatively appear that the court had no jurisdiction. In the absence, therefore, of any showing in the record either one way or the other, a presumption arises in favor of the validity of the judgment of a court of general jurisdiction, and the existence of all matters going to the power of the court or tribunal to render the judgment.
 
 
 21
 "Every fact will be presumed to have existed that was necessary to jurisdiction, over the subject matter or the parties."
 
 
 22
 An application to the Supreme Court of Texas for a writ of error was denied. The parties attacking the judgment then filed a suit in the Federal District Court contending that the refusal to declare the earlier judgment void amounted to a denial of due process. The Federal District Court dismissed the complaint for lack of jurisdiction, and this Court affirmed in 108 F.2d 758, 759 (1940) stating:
 
 
 23
 'The purpose of the suit is clearly to seek a review of the decisions of the Texas courts and the reversal of those decisions for error. The jurisdiction of the District Court is strictly original. It has no jurisdiction to reverse or modify the judgment of a state court. The errors complained of could be reviewed only by the Supreme Court. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362. It was the duty of the District Court to dismiss the suit. 28 U.S.C.A. 80.'
 
 
 24
 We are unable to detect any injury to plaintiff Doris C. M. Guido Falsetti resulting from her dismissal as ancillary administratrix. She was at all times a party to the proceedings in some capacity. She was represented by counsel, and was the real party in interest throughout the proceedings. It would be extremely difficult to maintain that she did not have adequate notice and an opportunity to protect her interests. It is true that Mr. Falsetti was appointed successor administrator after the rendition of the state court judgment, and after it became final. Mr. Falsetti was, by court order, limited in his administrative capacity in certain respects, but he was also empowered to take any legal action necessary to 'bring or defend any suit involving the assets of this estate, or the effect, if any, of the said judgment in Cause No. 39247 (Stella Marie Lowman, et vir, vs. Doris C. M. Guido, et al.) upon this estate.' Such action would also include the filing of a Bill of Review by an administrator.
 
 
 25
 We are unable to agree with the learned District Court that the state court judgment 'shows on its face' that it is void for want of an indispensable party, is subject to collateral attack in the U.S. Courts, and that it 'has no effect whatsoever.' We feel that the state court judge was entitled to consider the facts and circumstances surrounding the conduct of Mrs. Falsetti when she was serving as Administratrix; the appearance in court of the real parties in interest; the fact that Mrs. Falsetti, in her capacity as Administratrix, was a party during much of the state court litigation; and the several assertions in the record by Mrs. Falsetti to the effect that the probate proceedings in California had been completed and no debts were left unpaid. The state court judgment was subject to attack in Texas state courts by a Bill of Review, or by appeal to higher state courts. Neither remedy has been sought in the state courts.
 
 
 26
 Having thus determined that the state court judgment was valid, it is unnecessary to pass upon the existence of a contractual will executed by B. F. Guido, or an agreement by him to execute a will.
 
 
 27
 In reaching our conclusion in this case, we have not suggested the application of the doctrine of abstention. Although mindful of the myriad decisions and law review articles on the subject of abstention,[9] we have given full consideration to the contentions of the parties in this case. A substantial argument might support the application of the doctrine in consideration of the recognized public policy of maintaining a proper balance in the delicate field of Federal-State relations. We are cognizant of the duty of Federal Courts in proper jurisdictional circumstances, to pass upon questions of state law when necessary to the rendition of an appropriate judgment. Even so, Federal Courts should be extremely reluctant to declare null and void the solemn judgments of state courts of record when the record reflects mature and careful consideration by state courts of the legal problems presented. Indeed, all courts-- state and federal-- should proceed with caution and respectful restraint when requested to declare as a matter of law, that the judgments of another court of record are void on their face. The law supplies strong presumptions in support of the validity of such judgments and they should not be set aside on purely hypertechnical grounds, or for light and trivial reasons.[10]
 
 
 28
 We are, therefore, of the opinion that the District Court was in error and the judgment is reversed and the cause remanded with instructions to enter judgment in favor of the defendants.
 
 
 29
 TUTTLE, Chief Judge (specially concurring).
 
 
 30
 I concur in the result and in all that is said that is relevant to our decision. I write this brief concurring opinion only because I think that what is said about abstention is not appropriately a part of this opinion, and because I disagree with the major implications contained in the discussion of this subject. I can not conceive of our giving serious thought to abstaining in this case. I am not persuaded that we are not still guided in this area of the law by Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.
 
 
 31
 JOHN R. BROWN, Circuit Judge (specially concurring).
 
 
 32
 In view of the Chief Judge's special concurrence, I think that the question of abstention and the principles invoking it so recently discussed by the full Court in United Services Life Ins. Co. v. Delaney, 5 Cir., 1964, en banc, 328 F.2d 483, cert. denied, 1964, Paul Revere Life Ins. Co. v. First National Bank in Dallas, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298, should be deferred to a situation directly presenting the problem.
 
 
 
 [1]
 Defendants Pan American Petroleum Corporation's and Indiana Oil Purchasing Company's first amended answer and bill of interpleader establish that they are mere stakeholders and assert no claim to the royalty monies
 
 
 [2]
 'Art. 1982. (1837)(1198)(1202) For lands against decedents
 'In every suit against the estate of a decedent involving the title to real estate, the executor or administrator, if any, and the heirs shall be made parties defendant. Acts 1870, p. 173; G.L. vol. 6, p. 347; P.D. 5697.'
 
 
 [3]
 The United States District Court directed that certain funds derived from the production of oil on the land involved be paid over to the plaintiffs
 
 
 [4]
 Only those parts of the judgment as are here relevant are set out
 'In the District Court of Brazorida County, Texas.
 Stella Marie Lowman, et vir, vs. Doris C. M. Guido et al. Doris C. M. Guido et al. Final Judgment.'
 No. 39,247.
 'On this the 16th day of September, 1960, came on to be heard in its regular order in the above entitled and numbered cause Plaintiffs' Motion for Summary Judgment.'
 'The Plaintiffs in open Court dismissed the above entitled and numbered cause as to the Defendant Doris C. M. Guido in her capacity as Administratrix with Will Annexed in the Matter of the Estate of B. F. Guido, Deceased, No. A-29641 in the Superior Court of the State of California in and for the County of Orange, and also in her capacity as Administratrix With Will Annexed in the Ancillary Administration of the Estate of B. F. Guido, Deceased, No. 5626 in the County Court of Brazoria County, Texas, for the reason she has been removed as such Ancillary Administratrix.
 'Whereupon, the Court, having duly heard and considered the pleadings of the parties, Plaintiffs' Motion for Summary Judgment and Affidavit and Exhibits attached thereto, admissions of the Defendants and argument of counsel, is of the opinion that there is no genuine issue as to any material fact and that the Plaintiffs Stella Marie Lowman and husband Lawrence Gilbert Lowman are entitled to judgment as a matter of law, the Court finding as follows: That it has jurisdiction of the parties to and subject matter of the above entitled and numbered cause; that all citations and notices required by law in connection with Plaintiffs' suit have been duly served or given in the manner and form and for the length of time prescribed by law; that this is properly a class action and that all of the Defendants named in the fourth (4th) and fifth (5th) paragraphs of this Judgment having appeared in the above entitled and numbered cause constitute and are representative of a class of remaindermen whose rights are common under the contract by virtue of reciprocal and mutual wills of Dora Frank Guido, deceased and B. F. Guido, deceased, hereinafter enforced and established by this Judgment and that all of said Defendants named in said fourth (4th) and (5th) paragraphs of this Judgment fairly insured the adequate representation of the entire class of remaindermen both in number and in interest; that on or about July 31, 1929, Dora Frank Guido and B. F. Guido were married to one another and remained husband and wife until the death of Dora Frank Guido on or about September 16, 1949; that Dora Frank Guido died on or about September 16, 1949; leaving a written Last Will and Testament, dated December 3, 1942, now of record in Vol. 702, Page 527 of the Deed Records of Brazoria County, Texas, reference to which will and the record thereof is here made for all purposes, which will expressly provided that 'This Will is made in consideration of the making on this same day by my husband, B. F. Guido, of a will with the same terms and provisions, and it is our intention to create a Trust Estate as herein provided for the benefit of Mrs. Stella Marie Lowman and her husband, after her death, and for the distribution of the Trust Estate after termination of the Trust in the manner and terms herein set forth,'; that B. F. Guido offered or caused to be offered for probate said will of Dora Frank Guido in Cause No. 44415, in the County (Probate) Court of Harris County, Texas, was appointed executor thereof in the order of probate of said will entered by said Court, was issued letters testamentary as such executor, took possession of said estate as such executor, and received, appropriated and accepted the benefits under said will; that B. F. Guido never repudiated or revoked the agreement and the contract by virtue of reciprocal and mutual wills of Dora Frank Guido, deceased and B. F. Guido hereinafter enforced and established by this Judgment either at or prior to the death of Dora Frank Guido, deceased; that the will of Dora Frank Guido, deceased, dated December 3, 1942, was the result of an agreement between the said Dora Frank Guido and her husband B. F. Guido, is contractual in its nature and such agreement is evidenced by said will itself; that said will of Dora Frank Guido, dated December 3, 1942, is a written contract and agreement executed by her and in consideration of the making on the same date by B. F. Guido of a will with the same terms and provisions with the avowed intention to create a trust estate for the benefit of the Plaintiffs and for the distribution of the trust estate eventually to remaindermen, many of whom are Defendants herein, in the manner set forth in said will; that B. F. Guido in offering or causing to be offered for probate said will, in accepting the appointment of executor thereof, inaccepting Letters Testamentary, in receiving, appropriating and accepting the benefits under said will and by virtue of the contract expressed in said will, or for any one or more of such reasons, became thereby irrevocably bound by said agreement and contract to dispose of his estate, real, personal and mixed, at his death in accordance with and in the same manner as provided by the terms and provisions of said agreement and contract evidenced by the will of Dora Frank Guido, deceased, that is, leaving his estate in trust upon the same terms and for the same uses and benefits as provided therein; that B. F. Guido in offering or causing to be offered for probate said will, in accepting Letters Testamentary, in receiving appropriating and accepting the benefits under said will and by virtue of the contract expressed in said will, or for any one or more of such reasons, is estopped to assert that there was not an agreement and contract with Dora Frank Guido to have his estate, real, personal and mixed, at his death pass in accordance with and in the same manner as provided by the terms and provisions of said agreement and contract evidenced by the will of Dora Frank Guido, deceased; that B. F. Guido in offering or causing to be offered for probate said will, in accepting the appointment of executor thereof, in accepting Letters Testamentary, in receiving, appropriating and accepting the benefits under said will and by virtue of the contract expressed in said will, or for any one or more of such reasons, elected to take under the will of Dora Frank Guido, deceased and has thereby ratified and confirmed it and became thereby irrevocably bound by said agreement and contract to dispose of his estate, real, personal and mixed at his death in accordance with and in the same manner as provided by the terms and provisions of said agreement and contract evidenced by the will of Dora Frank Guido, deceased; that B. F. Guido died on or about June 14, 1957, leaving a written Last Will and Testament, dated July 3, 1951, hereinafter sometimes referred to as the 'subsequent will', which was admitted to probate in the Matter of the Estate of B. F. Guido, Deceased, No. A-29, 461 in the Superior Court of the State of California in and for the County of Orange and also in the ancillary administration in the Estate of B. F. Guido, Deceased, No. 5626 in the County Court of Brazoria County, Texas; that the subsequent will of B. F. Guido, deceased, dated July 3, 1951, did not revoke the agreement and contract between Dora Frank Guido and B. F. Guido hereinafter established and enforced by this Judgment; that all persons interested in the estate of B. F. Guido, deceased, or claiming under the subsequent will of B. F. Guido, deceased, dated July 3, 1951, are bound by the prior agreement and contract between Dora Frank Guido and B. F. Guido hereinafter established and enforced by this Judgment and are estopped to assert any right or rights inconsistent with such agreement and contract between Dora Frank Guido and B. F. Guido; that Dora Frank Guido at the time of her death on September 16, 1949, was seized and possessed of a considerable estate, including as her own separate property and estate the following described land situated in Brazoria County, Texas, to-wit:
 'An undivided one-half (1/2) interest in and to forty (40) acres of land, being the South Half of the North Half of the Southeast Quarter of Section No. 36, H.T. & B.R.R. Company Survey, Certificate No. 10/414, Brazoria County, Texas, same being more fully described in General Warranty Deed by B. F. Guido to Dora Frank Guido, dated February 27, 1934, now of record in Volume 246, Page 336 of the Deed Records of Brazoria County, Texas, to which deed and the record thereof reference is here made for all purposes; 'that B. F. Guido at the time of his death on June 14, 1957, was seized and possessed of a considerable estate, including the above described land which had been devised to and appropriated by him under the will of Dora Frank Guido; that said land above described was the subject of an Oil, Gas and Mineral Lease executed by Dora Frank Guido joined by her husband B. F. Guido et al., as Lessor, to Gillette Hill, as Lessee, dated May 1, 1934, now of record in Volume 249, Page 122 of the Deed Records of Brazoria County, Texas, and from which lease there has been production of oil, gas or other minerals by the said Lessee and its assignees continuously from a time prior to the date of death of Dora Frank Guido to the present time and the 'open mine' doctrine applies to the production, profits and royalties from said land and, consequently, the Plaintiffs are entitled thereto in accordance with the reciprocal and mutual wills established and enforced hereinafter by this Judgment.
 'It is Accordingly Ordered, Adjudged and Decreed as follows:
 'A. The agreement and contract for reciprocal and mutual wills entered into by Dora Frank Guido and B. F. Guido, both now deceased, as evidenced by the Last Will and Testament of Dora Frank Guido, deceased, dated December 3, 1942, now of record in Volume 702, Page 527 of the Deed Records of Brazoria County, Texas, is hereby established and enforced; the estate of B. F. Guido, deceased, including all property, real, personal and mixed, and wheresoever situated, is in all respects bound by and subject to the terms and provisions of said agreement and contract evidenced by said will of Dora Frank Guido, deceased, dated December 3, 1942; the estate of B. F. Guido, deceased, including all property, real, personal and mixed, and wheresoever situated, is hereby impressed with a trust in favor of the beneficiaries and devisees under said agreement and contract evidenced by said will of Dora Frank Guido, deceased, dated December 3, 1942; the title to and possession of the estate of B. F. Guido, deceased, including all property, real, personal and mixed, and wheresoever situated, is hereby divested from and out of those named as devisees and beneficiaries under the Last Will and Testament of B. F. Guido, deceased, dated July 3, 1951, and title to and possession of same is hereby vested in the beneficiaries and devisees under the agreement and contract between Dora Frank Guido and B. F. Guido, both deceased, as evidenced by the will of said Dora Frank Guido, deceased, dated December 3, 1942;
 'B. Plaintiffs Stella Marie Lowman and Lawrence Gilbert Lowman are entitled to receive from and after June 14, 1957, the date of death of B. F. Guido, deceased, all of the production, profits and royalties from the forty (40) acres of land in Brazoria County, Texas, hereinabove described and attributable to the interest that was vested in the estates of Dora Frank Guido, deceased and B. F. Guido, deceased, respectively, and said Plaintiffs are entitled to receive same in accordance with the terms and provisions of the agreement and contract for reciprocal and mutual wills as evidenced by the will of Dora Frank Guido, deceased, dated December 3, 1942;
 'C. The Defendants Doris C. M. Guido and Charles Leonard Short are hereby directed to deliver possession of any of the estate of B. F. Guido, deceased, now in their possession or which may come into their possession to Plaintiffs Stella Marie Lowman and Lawrence Gilbert Lowman;
 'D. All costs in the above entitled and numbered cause shall be paid by Defendants Doris C. M. Guido and Charles Leonard Short, for which execution may issue;
 'E. Plaintiffs Stella Marie Lowman and Lawrence Gilbert Lowman and the trustees named in the will of Dora Frank Guido, deceased, dated December 3, 1942, and their successors, and each of them, jointly and severally, shall have such writs as may be necessary or convenient to enforce this Judgment, including, but without limitation, writ or writs of possession; and;
 'F. All relief prayed for by any of the parties to the above entitled and numbered cause not specifically granted herein is hereby denied.
 'Entered and Signed this 18th day of October, A.D. 1960.'
 
 
 [5]
 No appeal or writ of error was ever perfected from the state court judgment by any person or parties to said suit, nor has there been any attempt to obtain equitable review in the Texas State Courts
 
 
 [6]
 Only those portions relevant to this mat ter are set out
 'In the County Court of Brazoria County, Texas.
 Estate of B. F. Guido, Deceased.
 No. 5626.
 Order Appointing Successor Administrator With Will Annexed and Issuance of Letters Testamentary. 'It Is Further Ordered, Adjudged and Decreed that said Louie A. Falsetti, Applicant herein, receive letters testamentary, upon taking the oath required by law, and giving bond in the sum of Ten Thousand and no/100 ($10,000.00) Dollars; and when the said Louie A. Falsetti shall have qualified according to law, the Clerk of this Court shall issue letters in accordance with this judgment and the law, and that all other applications of other persons for the issuance of letters testamentary or for appointment as administrator or executor are hereby denied, and 'It Is Further Ordered, Adjudged and Decreed that the said Louie A. Falsetti, applicant herein, shall not take charge of, disburse, expend, dissipate or waste any of the assets of this estate, without prior approval of the Court until and unless the effect, if any, of the judgment in said Cause No. 39247, styled Stella Marie Lowman, et vir. vs. Doris C. M. Guido, et al., in the District Court of Brazoria County, Texas, upon this estate is determined by a Court of competent jurisdiction in accord with the provisions of the said authenticated copy of the Last Will and Testament of B. F. Guido, Deceased, but applicant, Louie A. Falsetti, shall have full power to bring or to defend any suit involving the assets of this estate or the effect, if any, of the said judgment in Cause No. 39247 upon this estate. 'Signed and Rendered this 6 day of June, 1961.'
 
 
 [7]
 Sec. 37 of the Texas Probate Code provides:
 'When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject, however, to the payment of the debts of the testator or intestate, except such as is exempted by law; and whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exception aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right of possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with law. Acts 1955, 54th Leg., p. 88, ch. 55.'
 Title does not vest in the representative or the estate. A distinction is there-fore drawn between heirs or devisees and the representative. The statute apparently recognizes that there are circumstances under which such representative would or could not be made a party defendant. For example, adverse action of the representative or conduct of the representative as a basis for estoppel. See Berry v. Hindman, 61 Tex.Civ.App. 291, 129 S.W. 1181, err. ref.
 
 
 [8]
 The dismissed administratrix was actually retained in the suit in her individual capacity, but was dismissed in her representative capacity upon motion of Stella Marie Lowman in February 1960, for failure of said representative to discharge her duties as such
 
 
 [9]
 Railroad Comm'n. of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Clay v. Sun Ins. Office Ltd., 363 U.S. 207 (1960); United Services Life Ins. Co. v. Delaney, 328 F.2d 483 (5 Cir. 1964), cert. den. 32 L.W. 3400 (May 19, 1964); Inter Jurisdictional Certification, Beyond Abstention Toward Cooperative Judicial Federalism, 111 U.Pa.L.Rev. 344 (June 1958); Abstention and Certification in Diversity Suits: 'Perfection of Means and Confusion of Goals,' 73 Yale Law Journal 850 (1964); Certification of Questions from Federal Appellate Courts to Florida Supreme Court and its Impact on the Abstention Doctrine, 36 Tul.L.Rev. 571 (April 1962)
 
 
 [10]
 See Williamson v. Puerifoy, 316 F.2d 774 (5 Cir. 1963), wherein this Court quoted with approval the following language of the District Judge when that case was before the District Court:
 'In the first place, the State courts are older than the Federal courts. They were here administering justice and functioning between litigants for 150 years before the Federal Government was organized. When the Constitution was written and adopted these State courts were not abolished nor subordinated to the national courts created by the Constitution of the new nation. The national courts have jurisdiction only of those things conferred upon them by law. And at the time of the creation of the national courts and at time of writing the Constitution itself the State courts were kept as a separate and distinct judicial institution. As a result all cases that originate in the State court must be appealed to an appellate court of the State and thence to the Supreme Court of the State. All cases originating in the United States court must be appealed to the Circuit Court of the United States or to the Supreme Court of the United States. Nowhere has a Federal trial court been given supervisory or appellate jurisdiction over State judges.'